Syllabus.

| 69 | 923 |
| 73 | 565 |

## F. M. Leigh v. Thomas Harrison et al.

1. Limitation upon Estate. *Equitable life-estates. Liability for debts.*

   A bequest of the interest or dividends of personal property, or of the rents or income of land, to be used for the support of the donee for life, free from liability for his debts, is valid. The enforcement of such a limitation does not violate any rule of public policy, or interfere with the rights of creditors of the donee.

2. Same. *Restriction upon alienation. Equitable life-estates.*

   The ordinary doctrine that a restraint upon alienation is inconsistent with an estate in land has no application to an equitable life-estate.

3. Same. *Life-estate. Trust for support and maintenance. Case.*

   A testator devised to a daughter a sum of money and an undivided interest in land, the money to be loaned, and the land to be divided and rented by her, the interest and income to be devoted by her to the support of the testator's son during the son's life, making quarterly payments to him. The testator at his death, and when the will was executed, knew that the son was insolvent. *Held*, a bill in equity by creditors of the son to subject such interest and income must fail, since the purpose of the testator, which is a lawful one, was that the daughter, as trustee, should apply a sufficiency of such income to the support of the son, from year to year, so long as he lived, free from liability for his debts.

4. Same. *Excess of income. Whether subject to debts.*

   Whether, if there be an excess or accumulation of income in the hands of such trustee, not needed for the support of the *cestui que trust*, such excess could be subjected by creditors of the latter, is not decided.

5. Equitable Estates. *Liability to debts. Code 1880, § 1204.*

   The effect of § 1204, code 1880, is to subject to sale under execution at law equitable estates, which, in the absence of such statute, could always be subjected in equity. If creditors proceed in equity, the statute does not aid them.

6. Uses and Trusts. *Code 1880, § 1204, not applicable to active trusts.*

   The statute applies only where there is an equitable estate in the property itself. Where there is an active trust, as a mere duty or power in the trustee having the legal title to collect and pay over rents and income to the *cestui que trust*, the statute of uses does not apply.

7. WILL. *Construction. Intent. Inconsistent clauses.*

    Where the general purpose or scheme of the testator may be gathered from the whole will, a clause therein having reference merely to administration, if inconsistent with such purpose or scheme, will be disregarded.

FROM the chancery court of Lowndes county.
HON. T. B. GRAHAM, Chancellor.

The opinion states the facts.

*R. C. Beckett,* for appellant.

There is no clause in this will against alienation, no provision for forfeiture, nor that the income shall be liable for Thomas Harrison's debts; no provision that it shall only be paid on his written order, and no provision that it shall only be paid to him personally. He has an absolute, unqualified right to it, the only limitation being that it shall be paid quarterly. The unbroken current of English decisions, the great majority of American cases, and of those in the southern states, are to the effect that the income and profits in such a case can be reached in equity by creditors, and this even where there is a clause against alienation. 1 Dev. & B. Eq. (N. C.), 480; 4 Rich. Eq. (S. C.), 46; 56 Ga., 183; 10 Ala., 702; 65 *Ib.*, 134; 4 Ired. Eq. (N. C.), 136; 86 Ky., 159, 162; 42 Mo., 45; 10 Gratt., 336, 339, 348; 5 Wall., 433, 441; 36 Conn., 18, 22; 5 R. I., 205; 54 Iowa, 311; 80 *Ib.*, 436, 442; 5 Paige, 585–587; 4 Halst. (N. J. L.), 115; 18 Ves., 429; 2 Devlin on Deeds, § 965, note 5; 3 Redf., Wills, p. 494, 495, and notes; 1 Perry on Trusts (4th Ed.), §§ 386, 386*a*, 386*b*, 387, 388; 136 Pa., 153; 125 Mass., 263, 266, 267; 7 Lea, 353; 10 *Ib.*, 392; 29 Mich., 78, 79–81, 107.

In *Smith* v. *Towers*, 69 Mo., 84, it is said : "The English decisions are all one way," and " a majority of the American decisions " are to the effect that a man cannot by will so tie up the income of an estate that it cannot be reached by creditors. The decisions of the United States supreme court cannot be regarded as authority for a contrary position, since

in *Spindle* v. *Shreve*, 111 U. S., 542, it is said "limits within which such provisions may be made must·be found in the law of that jurisdiction which is the situs of the property." See, also, *Nichols* v. *Levy*, 5 Wall., 433.

I call especial attention to *Rudd* v. *Hagan*, 86 Ky., 159, which was decided under à statute similar to § 1204, code 1880.

As to the right to resort to equity, see *Pressly* v. *Rodgers*, ·24 Miss., 520.

" Certainly property available for pleasure or profit, should also be amenable to the demands of justice." 5 R. I., 212.

Restrictions against alienation were first introduced into settlements on married women, and have in some instances been erroneously extended to persons *sui juris*. 1 Dev. & B. (N. C.), 484; 4 Rich. (S. C.), 50, 51.

The exception in favor of trusts for married women is the solitary exception ingrafted on the rule. Perry on Trusts, § 386.

*J. A. Orr*, for appellees.

The argument that, under the provisions of this will, creditors of Thomas Harrison can take nothing, is so sensibly and lucidly made by so many able judges in ·numerous cases, I will confine myself to mere citation. *Pope* v. *Elliott*, 8 B. Mon., 61. The Kentucky statute is much the same as § 1204, code 1880; 21 Conn., 8; 27 Ala., 175; 86 Tenn., 81. This case sustains the trust independently of the Tennessee statute. 96 Mo., 430; 59 Vt., 530; 69 Md., 77; 19 At. R., 1058; *Garland* v. *Garland*, 87 Va., 758.

*Blewett Harrison Lee*, on the same side.

The following propositions may be laid down as to this trust:

1. It is an active, as distinguished from a dry or passive trust. It is to continue after the death of Thomas Harrison, as shown by the remainder to the trustee. The land is to be divided by the trustee both before and after Thomas' death. The trustee is to rent the land and loan the money. The

rentals and interest are to be used, not by the *cestui que trust*, as in the case of A. B. Harrison in item five of the will, but by the trustee herself, for the sole purpose of supporting Thomas during his life. The only part the latter takes in the administration of the trust is simply to be supported.

2. Upon the proper construction of the will, the trustee has a discretion in the application of the trust funds, since it is given for the support of Thomas during his life. The only thing which militates against this view is the provision that payments should be made to Thomas quarterly, but the obvious purpose of this is to save him from the humiliation of having his bills sent directly to the trustee, and to protect the latter from unnecessary and irregular demands. This is, however, a mere matter of administration—a part of the machinery—and cannot defeat the purpose of the trust.

3. The trust is for a specific purpose only—"for the support of Thomas during his life." The amount of support is ascertainable with reasonable certainty. 23 W. Va., 685.

If there is any surplus above the support, the trustee will take the same beneficially. 1 Sim. (N. S.), 92.

The fact that Thomas was insolvent when the will was made, shows the intention of the testator. This fact, in connection with the other, that the shares of the other children were given absolutely, is conclusive that the fund was meant to be protected against creditors of Thomas. 135 Pa., 585 ; 139 *Ib.*, 276; *Prewett* v. *Land*, 36 Miss., 495.

In *Pressly* v. *Rodgers*, 24 Miss., 520, the statute preserved in § 1204, code 1880, is held to apply only where the trustee has nothing but a naked, dry legal title, with the whole benefit in the *cestui que trust.* See, also, *Carpenter* v. *Bowen*, 42 Miss., 28.

Since the intention of the testator is clear as to the object and purpose of the bounty, the only question is, whether there is any illegality in the gift. It is not a case of a repugnant provision, where the limitation is inconsistent with the grant. 141 U. S., 296. Nor does the question whether an

equitable life-estate can be made subject to the restraint on alienation properly arise in this case. This is not a case of a vested equitable estate at all. It is a case of a trust, created for a specific purpose only. See Perry on Trusts, § 386*a;* 59 Vt., 530; 8 B. Mon., 56.

There is a difference between a life-estate and a fee, with regard to restraints on alienation. 6 T. R., 684; L. R. (3 Eq.), 315; 96 Mo., 439; 18 Vesey, 429; 91 U. S., 716.

Trusts are frequently created in England in favor of spendthrifts, with gifts over in case of insolvency, or on the discretion of the trustee, and this seems to be permitted everywhere. There is no more reason why trusts in favor of spendthrifts may not be maintained than those in favor of married women. See *Lampert* v. *Haydel,* 96 Mo., 439; 35 N. Y., 361; 51 *Ib.,* 338; 133 Mass., 170; 111 Ill., 247.

As to the distinction between active and passive trusts, see 59 Pa., 393; 47 *Ib.,* 113; 21 Conn., 1.

*Per curiam.*

The appellant is a judgment creditor of Thomas Harrison, and has sued out execution on his judgment, which has been returned *nulla bona.* He then exhibited his bill in the chancery court of Lowndes county against his debtor and against Mrs. Regina Lee, executrix of the last will and testament of Mrs. Regina Harrison, and trustee thereunder for said Thomas Harrison, and against James T. Harrison, who, under the will of Mrs. Harrison, was devised an undivided interest in certain lands, the other interest therein having been, by said will, devised to Mrs. Lee for the life of Thomas Harrison upon the trusts which appear. As to James T. Harrison, the only relief sought is partition of the lands devised as is directed by the will.

The will of Mrs. Harrison is as follows:

"I, Regina Harrison, make and publish this my last will and testament.

"*Item* 1. My residence and the lot on which it is built, being square 17, north of Main street, in the city of Columbus, I give to my two daughters, Regina L. Lee and Mary B. Harrison. All of the personal property, such as books, furniture, etc., in and about the house and on the lot, I give to my daughter, Mary B. Harrison, except my silver plate, and that will be equally divided by and between my said daughters; and to them I give my lot in the cemetery.

"*Item* 2. I give to my daughter, Regina L. Lee, in trust for the life of my son Thomas, with the remainder to her, three thousand dollars, and two-thirds of my plantation in Leflore county, being the same owned by my husband, and for fuller description of the land, I refer to the deed which vested the title in him, the land to be divided so that the improvements are to be on the two-thirds of the number of acres in the tract given her. She will rent the land and lend the three thousand dollars to the best advantage, and use the rents and the interest on the three thousand dollars for the support of Thomas during his life, making quarterly payments to him until his death. Then, the money, at the death of Thomas, to vest in my daughter, Regina, or, if she is not living, in her son, Blewett H. Lee, Mary, James T. and A. B. Harrison in equal parts.

"*Item* 3.—I give to my son, James T. Harrison, three thousand dollars, and the remaining one-third in acres of the tract of land described in item 2; the tract will be divided by metes and bounds.

"*Item* 4.—At the death of Thomas, the two-thirds of the place, as described in item 2, to be divided between my daughters, Regina and Mary, and my son, A. B. Harrison, in this proportion: Regina, or her son, Blewett H. Lee, if she, at the time of the death of Thomas, is not living, is to have one-half, and the other half of the lands given in trust for Thomas is to be equally divided between my daughter, Mary, and son, A. B. Harrison.

"*Item* 5.—I give to my daughter, Regina, three thousand

dollars, in trust for my son, A. B. Harrison, the interest to be used by him during his life.

"*Item 6.*—My daughter, Regina, can appoint a successor in her trust created in item 2.

"*Item 7.*—The residue of my estate, not herein bequeathed, is given to, and to be divided equally between my five children, the shares of Thomas and A. B. Harrison to be held in trust for them, as is provided in the above items. At the death of Thomas, his share is to be equally divided between my other heirs. A. B. Harrison can dispose of his as he wishes at his death.

"*Item 8.*—I appoint my daughter, Regina L. Lee, executrix to this will, and direct that she be not required to give any kind of security as executrix or trustee.

" This will is written wholly and entirely in my own handwriting, and signed and sealed by me, on this, the 27th day of February, A.D. 1890.        REGINA HARRISON."

The defendants demurred to the bill, and the demurrer was sustained and the bill dismissed. Complainant appeals.

The question presented for decision is, whether, under the will of his mother, Thomas Harrison took such an interest in the property devised to Mrs. Lee, upon trust for him, as that the property or its income can be subjected by his creditors to their demands.

It is argued for the appellant that, by the will of Mrs. Harrison, there was conferred upon Thomas the right to the income of the land and the interest on the money, and that whatever was given to him will be subjected to his creditors.

It is contended that the law will not permit an estate to be given to one, to be by him beneficially enjoyed, and yet so hedged about and defended that it cannot be subjected to the payment of his debts.

It is also said that, if it be conceded that the testatrix might, by apt provisions, have protected the benefit intended to be conferred upon Thomas from his creditors, she did not

do so, and that the provision of her will, in which she directs Mrs. Lee to pay the income arising from the land and money to Thomas *in quarterly payments*, evidences a clear purpose of the testatrix that he should have such income absolutely and unconditionally.

For the appellees it is contended that Mrs. Lee is, by the will, made trustee in an active, as distinguished from a dry or passive, trust; that the devise is to Mrs. Lee, coupled with an obligation to afford to Thomas a support during his life, but that a discretion is vested in Mrs. Lee as to how and when that support shall be given, and that whatever remains of the income over and above his support belongs to the trustee; that the provision for payment of the income quarterly was only introduced to save Thomas from the humiliation of having his bills for his support presented to the trustee, and, while it would be her duty to make quarterly payments to him in sums sufficient for his support, that duty would cease whenever he should cease to use them for that purpose, and the trustee could, thereafter, personally supervise the disbursement of the funds in his maintenance; that Thomas could not anticipate the fund or assign it, or devote it to the payment of his debts, because, to do so would defeat the scheme and intention of the testatrix. The appellees contend that there is no reason why the testatrix might not do as she pleased with her own estate, and deny that the creditors of Thomas have any just cause of complaint because Mrs. Harrison made such disposition of her estate as debarred them of access thereto, and also contend that the provisions of the will are not unlawful.

The industry of counsel for appellant has supplied us with a very great number of cases in support of the proposition that whatever beneficial interest in property is secured to a man may be taken by his creditors in payment of their demands against him. It must be admitted that the decisions in England are almost uniformly in support of appellant's contention, and that in America the decisions preponderate

in his favor. But we think the American courts have followed those of England without sufficiently appreciating the radical difference wrought by our registry laws and the broad public policy disclosed by the homestead and exemption laws of our states, and have failed to observe the difference between equitable interests and legal estates.

An examination of the English cases (in many of which the provision for the support of the debtor was subjected to his creditors) discloses that they rest upon the following propositions:

1. That a limitation of the use or enjoyment of property to the person of the grantee or devisee is a restraint repugnant to and inconsistent with the estate granted; and that the liability of an estate *in invitum* to the debts of the owner is a necessary incident thereto.

2. That it would be a fraud upon creditors to withhold from liability to their claims the estate of the debtor, upon the faith of which credit may have been extended.

3. That it is against public policy that one should be permitted to have, own and enjoy an estate to which his creditors cannot resort.

The reason first noted, while of very general application to legal estates, has never, even in England, been held to control equitable estates of a certain class—*i. e.*, trusts for the separate use of married women. In reference to such trusts Mr. Perry says: "It was at first thought to be an infringement upon marital rights for a stranger to confer property upon a wife independent of her husband, over which he could have no control, and in which he could have no interest. Equity has sustained these gifts of property to the wife, independent of the husband, upon the ground that the donor of the property, being the absolute owner, has the absolute right to dispose of it to such persons, and upon such conditions and limitations, not contrary to law, as he chooses; and, as the husband has no rights in such property, it is depriving him of no rights to confer none upon him. Thus it becomes a mere

question of public policy, whether proprietary rights should be conferred upon a wife independent of her husband. Public policy, in regard to the matter, has settled down upon the propriety of conferring separate proprietary rights upon married women. Equity has taken one other step in favor of married women which is not generally permitted in favor of men or unmarried women. In general, conditions or limitations forbidding the alienation of property by persons *sui juris* cannot be maintained; but courts of equity early sanctioned a condition or limitation of property upon married women, forbidding them to anticipate the income in any way, that is, the prohibiting them in any way from selling the property or its future produce for a present sum in hand." 2 Perry on Trusts, 646.

The equitable rule thus announced by Mr. Perry, and supported by the citation of numerous cases, is, so far as we are advised, universally recognized, and, in so far at least as trusts of this character are involved, it appears that the restraint upon the power of alienation is not repugnant to the estate, nor against public policy, nor forbidden because some third person (the husband), who, but for the restriction, might have secured a benefit, is by it excluded therefrom.

The manifest justice of the equitable rule in relation to trusts for married women commended it for application to other cases, and, under its operation, trusts for persons *sui juris* have, in several of the states, been upheld as against creditors of the beneficiary seeking to subject his interest to their debts, in opposition to the will of the donor.

Of the decisions sustaining the right of the donor to exclude by the terms of the trust the creditors of the beneficiary, the following may be noted as containing exhaustive examinations of the principles involved and vigorous argument in vindication of the right: *Pope* v. *Elliott*, 8 B. Mon., 56; *Nichols* v. *Eaton*, 91 U. S., 716; *Bank* v. *Adams*, 133 Mass., 170; *Lampert* v. *Haydel*, 96 Mo., 439.

It was settled at a very early day in Pennsylvania that

limitations of this character were valid. *Fisher* v. *Taylor*, 2 Rawle, 33. And they have since been frequently upheld. *Ashurst* v. *Given*, 5 Watts & Serg., 323; *Holdship* v. *Patterson*, 7 Watts, 547; *Brown* v. *Williamson*, 36 Pa., 113. So in Vermont, *White* v. *White*, 30 Vt., 338. Maryland, *Smith* v. *Towers*, 69 Md., 77. Connecticut, *Leavitt* v. *Beirne*, 21 Conn., 1. And Virginia, *Garland* v. *Garland*, 87 Va., 758.

In England the right of the donor to provide for a termination of the estate or interest of the beneficiary upon his bankruptcy or insolvency, if there be a limitation over to a third person of the estate or benefit, is recognized and upheld. The denial is of the right to so tie up the estate as that, remaining that of the donee, it may not be taken by his creditors. *Cooper* v. *Wyatt*, 5 Mad., 480; *The King* v. *Robinson*, Wrightw., 393; *Shee* v. *Hale*, 13 Ves., 404; *Brandon* v. *Robinson*, 18 Vesey, 432.

The English rule, considered as one in the interest of the creditors of the donee, is inconsistent, and affords no protection to them, for the donor has but to provide for a termination of the interest of the beneficiary upon his bankruptcy or insolvency, and, this being done, the creditors take nothing. They could not take less if the estate should be left in the beneficiary free from their claims. Considered as a rule established in the interest of creditors, the effect seems to be to secure to them only the benefit, if benefit it is, of having a third person to take the estate free from their claims rather than permit the debtor to retain it in the same manner.

We confess our inability to perceive how a creditor can be said to be injured or defrauded by the recognition of power in a donor to limit his bounty according to his own will. The creditor has no right to the property in the hands of the donor, and no equity, that we can perceive, in any disposition which the owner may make of it. If Mrs. Harrison had given Thomas nothing, upon what principle could his creditors complain? How are their rights (if they had none) infringed by any limitations she chose to impose upon the be-

quest she did make? It must be admitted that the right to make a will is not a natural right, and that no unlawful disposition may be made of the property devised. But what law is violated by disposing of property with a limitation which confines its benefit to the person of the donee? It cannot be said that it is against public policy for a testator to provide a support for a spendthrift child, for the interest of the public is that such child shall not become a public burden. Our statutes upon the subject of exemptions indicate a clear public policy that exemption from personal pauperism is of greater concern than the rights of creditors. A donation by will or deed with limitation against liability to the debts of the donee, cannot invite to undue credit being given to the donee, for such instruments are required to be recorded, and third persons may, by examination of the public records, learn the terms on which the bounty is to be enjoyed.

The reason sometimes, if not universally given, that the limitation is inconsistent with the estate given, presents the most serious objection to their validity.

But, as was said by Mr. Justice Miller in *Nichols* v. *Eaton*, 91 U. S., 716, "we do not see, as implied in the remark of Lord Eldon, that the power of alienation is a necessary incident to a life-estate in real property, or that the rents and profits of real property and the interest and dividends of personal property may not be enjoyed by an individual without liability for his debts being attached as a necessary incident to such enjoyment. The doctrine is one which the English chancery court has ingrafted upon the common law for the benefit of creditors, and is comparatively of modern origin. We concede that there are limitations which public policy or general statutes impose upon all dispositions of property—such as those designed to prevent perpetuities and accumulations of real estate in corporations and ecclesiastical bodies. We also admit that there is a just and sound policy, peculiarly appropriate to the jurisdiction of courts of equity, to protect creditors against frauds upon their rights, whether

they be actual or constructive frauds.    But the doctrine that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court."

In *Lampert* v. *Haydel*, 96 Mo., 439, Judge Sherwood, in an instructive opinion, shows that the doctrine that a restraint upon alienation is inconsistent with the estate granted, has no application in principle to an *equitable life-estate;* that courts of equity, dealing with *one class of these trusts*—*i. e.*, those created for the benefit of married women—have uniformly upheld limitations against alienation to effectuate the intention of the author of the trust, and declares that "it is difficult to see why, with a like object in view—*i. e.*, the effectuation of the gift just as the author intended it to be effectuated—such court may not lay down and declare a rule in such a case as this, which shall be equally effectual in preventing the intention of the donor from being thwarted; a rule which injures or defrauds no one, which violates no rule of public policy, and which gives stability and protection to a provision, which, originating in the warmest ties of affection, seeks to afford to the beneficiary a sure and unfailing refuge against the vicissitudes of fortune."

The argument in favor of the validity of these limitations, impresses us as both sound and conservative.    Our statute against perpetuities would seem to express the whole legislative will on that subject, and to fix the limit which may not be exceeded, but within which restraints against alienation may lawfully be imposed—at least upon equitable estates for life—which, whatever may be the rule as to legal estates, either in fee or for life, would seem not to be subject to the objection that the limitation is in derogation of the estate.    We can perceive no reason why courts of equity, whose principles and

administration give rise to and protect these estates, should not so mold and preserve the trusts declared, as to protect and give effect to trusts for improvident and spendthrift persons, who are objects of solicitude to their parents and friends. It is not more generally true that married women need the intervention of equity to protect their estates from the avarice or improvidence of husbands, than that the unfortunate class called spendthrifts require like restraint from the consequences of their own vices and extravagance.

The affection of parents may be relied on to prevent the imposition of such limitations, except in cases in which the interest of the individual and of the public alike will be subserved.

But it is said that the devise in favor of Thomas Harrison is subjected to the demands of creditors by § 1204 of the code, which is as follows:

" Estates of any kind, holden or possessed in trust for another, shall be subject to the like debts and charges of the person to whose use or for whose benefit they are holden or possessed, as they would have been subject to if the person had owned the like interest in the thing holden or possessed as he may own in the uses or trusts thereof, whether the trust be fully executed or not, and may be sold under execution at law, so as to pass whatever interest the *cestui que trust* may have."

The effect of this statute is to subject equitable assets to sale under execution at law; but since the complainant is proceeding in a court of equity in which such assets might always have been subjected, we do not perceive that any thing is added to his position by invoking the statute.

The statute can have no operation upon the estate of the trustee, nor subject it to the debt of the *cestui que trust*, unless he has an equitable estate in the property of which the trustee has the legal title.

It is uniformly held that when an active, as distinguished from a dry or passive trust, is created, the statute of uses does

not apply.   It is equally well settled that the use remains a
mere equitable estate when an agency, duty or power is im-
posed on the trustee to collect and pay the rents, incomes and
profits to the beneficiary.   *Mott* v. *Buxton,* 7 Ves., 201;
*Wheeler* v. *Newhall,* 7 Mass., 189; *Chapin* v. *Universalist Soci-
ety,* 8 Gray., 580; *Garth* v. *Baldwin,* 2 Ves., 646; *Anthony* v.
*Rees,* 2 Cromp. & I., 75; *Vail* v. *Vail,* 4 Paige, 317; *Sylvester*
v. *Wilson,* 2 L. R., 444.

Under the will of Mrs. Harrison, it is clear that Mrs. Lee
has imposed upon her certain duties, the performance of
which requires the continuance of the legal estate in her.
She is to divide the land in Leflore county, and thereafter
rent the portion set apart to her, and collect the rents; she
is to lend the money, and to use the income arising from
land and money in the support of Thomas Harrison.   The
manifest purpose of the testatrix is that Thomas shall have
assured to him an annual support, to be personally supervised
and applied to his use by the trustee.   It is true that, by the
clause of the will directing that the trustee shall make quar-
terly payments to Thomas during his life, an apparent incon-
sistency is presented, and it is this clause which creditors
have seized upon as transferring the income absolutely and
unqualifiedly to Thomas, by reason of which a liability to
their debts is claimed.

To subject the whole income to the debts of Thomas would
be to nullify the scheme of the testatrix because of a mere de-
fect in the mode of its administration.   The paramount pur-
pose of the testatrix was that Thomas should have, from year
to year, a fixed and sufficient support.   He was insolvent when
the will was made and when the testatrix died, as fully ap-
pears in the bill and exhibit.   Mrs. Harrison must be presumed
to have known his condition and to have acted with reference
to it.   She knew that unless the fund should be protected
from his creditors, a devise to him would be, in effect, a devise
to them; and, for the manifest purpose of securing support
to him, she vested the fund in the hands of a trustee, who

was to " use the same in the support of Thomas, making quarterly payments to him during his life."

The office of courts is to discover the will of testators, and, it being found, if lawful, to effectuate it. We are now asked to seize upon a clause inconsistent with the general scheme, and, by construction, use it as a lever to overthrow the whole structure. This we cannot do. It is our duty to uphold the whole will, and, to do so, we should disregard subordinate and administrative provisions rather than enlarge their effect to the destruction of the scheme. We do not construe that clause which directs the trustee to make quarterly payments to Thomas as excluding the power and duty of the trustee to apply so much thereof as may be necessary to his comfortable support and maintenance according to his condition in life. So long as the fund may be in that manner applied in accordance with the will of the testatrix, it is permissible for the trustee so to disburse it; but when, and if, either by reason of a wilful misapplication by Thomas, or a diversion of it by the act of his creditors, the scheme of the testatrix is, or may be, frustrated, it is within the power and duty of the trustee to intervene and to so control and apply a sufficiency thereof as to afford the support to Thomas contemplated by his mother.

There is no averment in the bill that the fund is more than sufficient for the support of the beneficiary. We have, therefore, dealt with the question on the assumption that it is not. What we have said has application only to so much of the income as may be necessary to effectuate the scheme of the testatrix. If, in the course of time, it may appear that there is an accumulation of the income, over and above the sum needed for the support of Thomas, such excess would seem to be liable to creditors, by reason of the fact that the whole income is given to him, and, as to such excess, the direction to the trustee to pay it to him quarterly would be absolute and unconditional. We cannot concur in the suggestion of counsel for appellees, that Mrs. Lee would take, beneficially,

such excess.  The authorities relied on by them are found to
be cases in which bequests have been made to the widow for
the education and maintenance of children, and proceed upon
the presumed intention of the testator to supply a fund for
the maintenance of the family, and that the widow, as the
head of the family, should take the surplus.  *Hadow* v. *Hadow*,
9 Sim., 438; *Berkeley* v. *Swinburne*, 6 Sim., 613; *Browne* v.
*Paul*, 40 Eng. Ch. Rep., 92.

*Affirmed.*