# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00033-SCT

*WILLIAM B. SLIGH AND LUCY M. SLIGH*

*v.*

*FIRST NATIONAL BANK OF HOLMES COUNTY,*
*TRUSTEE; VIRGINIA TATE AND WILLIAM C.*
*BARDIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/29/95 |
| TRIAL JUDGE: | HON. EDWARD G. CORTRIGHT, JR. |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | J. M. RITCHEY |
| ATTORNEYS FOR APPELLEES: | ROBERT E. BOX, JR. |
| | H. D. BROCK |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 10/9/97 |
| MOTION FOR REHEARING FILED: | 10/23/97 |
| MANDATE ISSUED: | 12/30/97 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. This case comes on appeal from the Chancery Court of Holmes County, where Will and Lucy Sligh sought to garnish Gene Lorance's beneficial interest in two spendthrift trusts in order to partially satisfy a tort judgment for damages resulting from injuries sustained by Will Sligh in an automobile accident with Gene Lorance. On December 15, 1995, the chancellor dismissed the Slighs' complaint, ruling that the assets of spendthrift trusts may not be garnished to satisfy the claims of tort judgment creditors. Aggrieved, the Slighs appeal to this Court, assigning as error the following issues:

> **I. WHETHER THE CHANCELLOR ERRED IN DISMISSING THE SLIGHS' COMPLAINT WITHOUT GRANTING THEM THE OPPORTUNITY TO AMEND PURSUANT TO MISSISSIPPI RULE OF CIVIL PROCEDURE 15(a).**

> **II. WHETHER THE CHANCELLOR ERRED IN FAILING TO RECOGNIZE AND**

ESTABLISH A PUBLIC POLICY EXCEPTION TO THE SPENDTHRIFT TRUST DOCTRINE IN FAVOR OF THE BENEFICIARY'S INVOLUNTARY TORT CREDITORS.

## FACTS

¶2. On January 30, 1993, William B. Sligh was involved in an automobile accident with Gene A. Lorance, an uninsured motorist who was operating a vehicle while intoxicated. As a result, Will Sligh suffered a broken spine and resulting paralysis, including loss of the use of both legs, loss of all sexual functions and loss of the ability to control bowel and urinary functions. Lorance was convicted of the felony of driving under the influence and causing bodily injury to another, for which he was sentenced to serve ten years, with six years suspended, in the custody of the Mississippi Department of Corrections.

¶3. On April 2, 1993, Will and his wife, Lucy M. Sligh, filed in the Circuit Court of Holmes County an action against Lorance alleging gross negligence resulting in personal injury, property damage and loss of consortium, for which they sought compensatory and punitive damages. Lorance failed to respond, and after entry of default and a hearing on the Slighs' Motion for Writ of Inquiry on January 25, 1994, the circuit court entered default judgment against Lorance for $5,000,000 in compensatory and punitive damages.[(1)]

¶4. Lorance has no assets other than his interest as beneficiary of two spendthrift trusts established by his mother in 1984 and 1988, respectively, before she died in 1993. Both trusts, whose trustee is First National Bank of Holmes County ("First National Bank"), provide as follows:

> 1. My said Trustee shall have full and complete authority to expend all or any part of the income or corpus of said trust property for the benefit of myself and my said son, Gene Lorance, and shall have the right to make payments directly to me and to my said son or to anyone for myself or my said son.

> 2. The Trustee shall have the right to invest, re-invest, manage and care for said property in the same manner as though said property was the individual property of said Trustee, and my said Trustee shall not be required to give bond, or account to Court, and shall have all the powers conferred by the Uniform Trustees' Powers Act as the same is now in force in the State of Mississippi and the power to sell, lease or encumber real property. My said Trustee shall exercise the powers herein granted for what may be, in the discretion of my said Trustee, in the best interest of myself and said Gene Lorance, and shall pay to me or the said Gene Lorance such sums and at such times as my said Trustee thinks in my or his best interest. *No part of this trust, either principal or income, shall be liable for the debts of the said Gene Lorance, nor shall the same be subject to seizure by any creditor of his* and he shall not have the right to sell, assign, transfer, encumber or in any manner anticipate or dispose of his interest in said property, or any part of same, or the income produced from said trust or any part thereof.

(emphasis added). Lorance is the lifetime beneficiary of the two trusts, which each have two remaindermen, Virginia Tate and William C. Bardin.

¶5. On June 29, 1994, Will and Lucy Sligh filed in the Circuit Court of Holmes County a Suggestion

for Writ of Garnishment as to First National Bank, either in its corporate capacity or in its capacity as trustee of the two trusts. A Writ of Garnishment was issued and served upon First National Bank, who, in its answer filed on June 30, 1994, admitted that it was indebted to Lorance in the amount of $313,677.48, but asserted that such sum was held in trust for Lorance and was not subject to seizure. After the Slighs filed a motion for judgment on the answer and First National Bank filed its response, First National Bank moved for a dismissal or, in the alternative, for a transferal of the garnishment proceeding to chancery court. On October 5, 1994, the circuit court transferred the proceeding to the Chancery Court of Holmes County.

¶6. On October 25, 1994, the Slighs filed in that court their complaint naming as defendants First National Bank, Gene Lorance, Viginia Tate and William Bardin. The Slighs alleged, in addition to the aforementioned facts, that Lorance's mother, Edith Lorance, had actual knowledge of the following facts: her son was an habitual drunkard who had been unsuccessfully treated for alcoholism; he was mentally deficient and had been previously committed to mental institutions; he had impaired facilities due to his alcoholism and mental disorders; he regularly operated motor vehicles while intoxicated; he was a reckless driver who had been involved in numerous automobile accidents; and he had been arrested and convicted on numerous occasions for driving under the influence. The complaint alleged that despite her actual knowledge of these facts, Mrs. Lorance established the two trusts as part of her intentional plan and design to enable her son to continue to lead his intemperate, debauched, wanton and depraved lifestyle while at the same time shielding his beneficial interest in the trusts from the claims of his involuntary tort creditors. The Slighs alleged that it was a violation of public policy to enforce and give priority to spendthrift trust provisions over involuntary tort judgments against the beneficiary, and they urged the court to recognize and enforce a public policy exception to the spendthrift trust doctrine in favor of involuntary tort creditors by subjecting Lorance's beneficial interests to the payment of their tort judgment in one or more of several equitable ways suggested in their complaint.

¶7. After the defendants filed their respective answers, First National Bank filed a Motion for Dismissal on October 27, 1995. On December 15, 1995, the chancellor granted the motion, ruling that the Slighs failed to state a claim upon which relief can be granted. The chancellor ruled that "a tort judgment creditor may not garnish the trustee of a spendthrift trust in which the tort judgment defendant is a mere lifetime discretionary income beneficiary, nor are the assets of such trust subject to the claims of the tort judgment creditor."

**DISCUSSION**

**I. WHETHER THE CHANCELLOR ERRED IN DISMISSING THE SLIGHS' COMPLAINT WITHOUT GRANTING THEM THE OPPORTUNITY TO AMEND PURSUANT TO MISSISSIPPI RULE OF CIVIL PROCEDURE 15(a).**

¶8. Rule 15(a) provides in relevant part:

On sustaining a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), or for judgment on the pleadings, pursuant to Rule 12(c), thirty days leave to amend shall be granted, provided matters outside the pleadings are not presented at the hearing on the motion.

*Miss.R.Civ.P. 15(a)*

The Slighs argue that because no matters outside the pleadings were presented at the hearing on First National Bank's Motion for Dismissal, the chancellor erred in failing to grant the Slighs thirty days to amend after sustaining the motion.

¶9. The Slighs were not required to petition the court for thirty days leave to amend their complaint. *O'Cain v. Harvey Freeman and Sons*, 603 So. 2d 824, 829 (Miss. 1991). Under Rule 15(a), the court's dismissal of their complaint for failure to state a claim for which relief can be granted afforded the Slighs an automatic right to amend within thirty days. Had they done so, their amended complaint would have been accepted. However, because they failed to exercise that right by filing an amended complaint, we find this assignment of error to be without merit.

### II. WHETHER THE CHANCELLOR ERRED IN FAILING TO RECOGNIZE AND ESTABLISH A PUBLIC POLICY EXCEPTION TO THE SPENDTHRIFT TRUST DOCTRINE IN FAVOR OF THE BENEFICIARY'S INVOLUNTARY TORT CREDITORS.

### A. The Statute on Trust Estates Subject to Execution

¶10. The Slighs cite Miss. Code Ann. § 89-1-43 (1991), first enacted in 1824 and amended in 1857, which provides in part:

> Estates of any kind holden or possessed in trust for another, shall be subject to the like debts and charges of the person to whose use or for whose benefit they are holden or possessed as they would have been subject to them if the person had owned the like interest in the thing holden or possessed as he may own in the uses or trusts thereof, whether the trusts be fully executed or not.

Although this statute initially appears to subject trust estates to any claims of the beneficiaries' creditors, the statute goes on to say that "[s]aid estates may be sold under execution *at law*..." (emphasis added). This Court held long ago that this statute provides no aid to the creditor who proceeds in a court of equity, nor can it subject the trustee's estate to the debts of the beneficiary unless the beneficiary has an equitable estate in the property of which the trustee has legal title. *Leigh v. Harrison*, 69 Miss. 923, 11 So. 604 (1892). Therefore, this statute adds nothing to the Slighs' claim.

### B. The Spendthrift Trust Doctrine

¶11. The spendthrift trust doctrine is codified by statute in some states and is a judicially created doctrine in others. In Mississippi, where the doctrine was judicially created, our main authority on point is the case of *Leigh v. Harrison*, 69 Miss. 923, 11 So. 604 (1892).

¶12. In that case, Regina Harrison left a testamentary trust for the support of her insolvent son, Thomas, whose judgment creditor filed a bill in chancery to reach Thomas' beneficial interest. *Leigh*, 69 Miss. at 927, 11 So. at 604. Although the trust contained no spendthrift language, the Court held that under the circumstances, it could only have been Mrs. Harrison's intent that the trust should be protected from her son's creditors, lest "a devise to him would be, in effect, a devise to them." *Id.* at

937, 11 So. at 607. In holding the trust to be immune from the claims of Thomas' creditors, the Court discussed the rights of creditors as follows:

> [W]e confess our inability to perceive how a creditor can be said to be injured or defrauded by the recognition of power in a donor to limit his bounty according to his own will. The creditor has no right to the property in the hands of the donor, and no equity, that we can perceive, in any disposition which the owner may make of it. If Mrs. Harrison had given Thomas nothing, upon what principle could his creditors complain? How are their rights (if they had none) infringed by any limitations she chose to impose upon the bequest she did make? It must be admitted that the right to make a will is not a natural right, and that no unlawful disposition may be made of the property devised. But what law is violated by disposing of property with a limitation which confines its benefit to the person of the donee? It cannot be said that it is against public policy for a testator to provide a support for a spendthrift child, for the interest of the public is that such child shall not become a public burden. Our statutes upon the subject of exemptions indicate a clear public policy that exemption from personal pauperism is of greater concern than the rights of creditors. A donation by will or deed with limitation against liability to the debts of the donee, cannot invite to undue credit being given to the donee, for such instruments are required to be recorded, and third persons may, by examination of the public records, learn the terms on which the bounty is to be enjoyed.

*Id*. at 933-34, 11 So. at 606. On the policy of enforcing the wishes of donors, the Court quoted the following passage by the U.S. Supreme Court:

> [W]e do not see . . . that the power of alienation is a necessary incident to a life-estate in real property, or that the rents and profits of real property and the interest and dividends of personal property may not be enjoyed by an individual without liability for his debts being attached as a necessary incident to such enjoyment. The doctrine is one which the English chancery court has ingrafted upon the common law for the benefit of creditors, and is comparatively of modern origin. We concede that there are limitations which public policy or general statutes impose upon all dispositions of property -- such as those designed to prevent perpetuities and accumulations of real estate in corporations and ecclesiastical bodies. We also admit that there is a just and sound policy, peculiarly appropriate to the jurisdiction of courts of equity, to protect creditors against frauds upon their rights, whether they be actual or constructive frauds. But the doctrine that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court.

*Id*. at 934-35, 11 So. at 606 (quoting *Nichols v. Eaton*, 91 U.S. 716, 1725 (1875)). On another policy consideration favoring the enforcement of spendthrift trust provisions, the Court stated:

> We can perceive no reason why courts of equity, whose principles and administration give rise to and protect these estates, should not so mold and preserve the trusts declared, as to protect and give effect to trusts for improvident and spendthrift persons, who are objects of solicitude to their parents and friends. It is not more generally true that married women need the

intervention of equity to protect their estates from the avarice or improvidence of husbands, than that the unfortunate class called spendthrifts require like restraint from the consequences of their own vices and extravagance.

*Leigh*, 69 Miss. at 935-36, 11 So. at 606-607.

¶13. In the case of *Calhoun v. Markow*, 168 Miss. 556, 151 So. 547 (1933), the beneficiary's bankruptcy trustee filed a bill in chancery to attach the beneficiary's interest in a spendthrift trust in order to satisfy the claims of the beneficiary's creditors. On appeal after the chancery court denied the claim, this Court held:

We think the chancellor was correct in his holding that neither the property nor the income were subject to [the beneficiary's] debts. The property covered by the trust instrument belonged to [the donor], and she could deal with it as she pleased, provided it did not infringe any of the provisions of law; and the decisions in this state show that a trust of this kind is lawful and that it is permissible for a parent to place property in the hands of a trustee to secure a child from poverty, want, or misfortune, and to provide for the necessities of life for such child. A creditor has no right to look to property in such a trust for the satisfaction of his demands. Creditors are charged with a knowledge of the law and the provisions of such trusts.

*Calhoun*, 168 Miss. at 565-66, 151 So. at 549.

¶14. These two cases, standing for the broad principle that spendthrift trust assets are not subject to the claims of the beneficiary's creditors, comprise almost the entire extent of this Court's pronouncements on the matter. In another case, we held that the spendthrift trust doctrine does not protect the beneficiary's interest from his creditors where the trust is a self-settled trust, i.e., where the trust is for the benefit of the donor. *Deposit Guaranty Nat'l Bank v. Walter E. Heller & Co.*, 204 So. 2d 856, 859 (Miss. 1967). Although this Court has had no opportunity to establish any other exceptions to the doctrine, there are four other exceptions which have been recognized in other jurisdictions and are stated in the *Restatement (Second) of Trusts* § 157 (1959) as follows:

Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

(a) by the wife or child of the beneficiary for support, or by the wife for alimony;

(b) for necessary services rendered to the beneficiary or necessary supplies furnished to him;

(c) for services rendered and materials furnished which preserve or benefit the interest of the beneficiary;

(d) by the United States or a State to satisfy a claim against the beneficiary.

Although the rule does not list an exception for involuntary tort creditors, the comment on the scope of the rule provides:

The enumeration in this Section of situations in which the interest of the beneficiary of a spendthrift trust or of a trust for support can be reached is not necessarily exclusive. The

interest of a beneficiary of a spendthrift trust or a trust for support may be reached in cases other than those herein enumerated, if considerations of public policy so require. Thus it is possible that a person who has a claim in tort against the beneficiary of a spendthrift trust may be able to reach his interest under the trust.

*Restatement (Second) of Trusts § 157 cmt. (a) (1959).*

¶15. In *The Law of Trusts*, Austin W. Scott explained as follows:

There is little authority on the question whether the interest of the beneficiary of a beneficiary of a spendthrift trust can be reached by persons against whom he has committed a tort. In the absence of authority it was felt by those who were responsible for preparation of the Restatement of Trusts that no categorical statement could be made on the question. It is believed, however, that there is a tendency to recognize that the language of the earlier cases to the effect that no creditor can reach the interest of a spendthrift trust is too broad, and that in view of the cases that have been cited in the previous sections allowing various classes of claimants to reach the interest of the beneficiary, the courts may well come to hold that the settlor cannot put the interest of the beneficiary beyond the reach of those to whom he has incurred liabilities in tort.

Austin W. Scott, *The Law of Trusts* § 157.5 (4th ed. 1987).

¶16. Legal scholars for years have called for the recognition of a public policy exception to the spendthrift trust doctrine in favor of tort judgment creditors.[2] However, there is little case law on the matter. In *Thackara v. Mintzer*, 100 Pa. 151, 154-55 (1882), the Pennsylvania Supreme Court, in upholding the validity of a spendthrift trust, declared in dicta that "[w]hether the judgment be for a breach of contract or for a tort, matters not." In *Kirk v. Kirk*, 254 Or. 44, 456 P.2d 1009 (1969), the Oregon Supreme Court held that the interest of a spendthrift trust created by the United States for the Klamath Tribe of American Indians was unreachable by the Indian beneficiary's tort judgment creditor. However, at least one state, Louisiana, has recognized an exception to the spendthrift trust doctrine in favor of tort judgment creditors, which doctrine and exception were codified by the Louisiana Legislature.[3]

### C. Public Policy Considerations

¶17. Upon examination of the two Mississippi cases, *Leigh* and *Calhoun*, one can identify three public policy considerations observed by this Court when enforcing spendthrift trust provisions: (1) the right of donors to dispose of their property as they wish; (2) the public interest in protecting spendthrift individuals from personal pauperism, so that they do not become public burdens; and (3) the responsibility of creditors to make themselves aware of their debtors' spendthrift trust protections. Upon consideration of these public policy concerns in the present context, we find that they do not weigh in favor of enforcing spendthrift trust provisions as against the claims of tort creditors or those found liable for gross negligence.

¶18. Regarding the responsibility of creditors when entering into transactions with spendthrift trust beneficiaries, Austin W. Scott stated in *The Law of Trusts*:

In many of the cases in which it has been held that by the terms of the trust the interest of a beneficiary may be put beyond the reach of his creditors, the courts have laid some stress on the fact that the creditors had only themselves to blame for extending credit to a person whose interest under the trust had been put beyond their reach. The courts have said that before extending credit they could have ascertained the extent and character of the debtor's resources. Certainly, the situation of a tort creditor is quite different from that of a contract creditor. A man who is about to be knocked down by an automobile has no opportunity to investigate the credit of the driver of the automobile and has no opportunity to avoid being injured no matter what the resources of the driver may be.

Scott, *supra*. Likewise, George T. Bogert reasoned in **Trusts and Trustees**:

It is true that a tort creditor has had no chance to choose his debtor and cannot be said to have assumed the risk of the collectibility of his claim. The argument for the validity of spendthrift trusts based on notice to the business world of the limited interest of the beneficiary does not apply. It may be argued that the beneficiary should not be permitted to circumvent the case and statute law as to liability for wrongs by taking advantage of the spendthrift clause.

George T. Bogert, **Trusts and Trustees** § 224 (2d ed. Rev. 1992). As these scholars point out, it is plain to see that one of the main reasons for enforcing spendthrift trust provisions -- the responsibility of creditors to be aware of the law and of the substance of such provisions -- simply does not apply in the case of tort judgment creditors.

¶19. As for the public interest in protecting spendthrift individuals from personal pauperism, we believe that this interest is not as strong in the case of tort judgment creditors, where the inability to collect on their claims may well result in their own personal pauperism. While it is true that most contract creditors do not risk becoming insolvent if they do not collect on a particular claim, such is often not the case with tort judgment creditors, particularly those who have suffered such devastating and expensive injuries as did the Slighs. The public interest against individuals becoming public burdens would not be served by protecting a spendthrift tortfeasor from personal pauperism where such protection would result merely in the pauperism of his victim. If one must choose whom to reduce to personal pauperism in such a case, the spendthrift tortfeasor or the innocent tort judgment creditor, we are inclined to choose the party at fault, especially where that fault rises to the level of gross negligence or intentional conduct.

¶20. This limitation on the public interest in protecting individuals from personal pauperism is reflected in our federal bankruptcy laws, whose very purpose is to protect debtors from pauperism. Under the Federal Bankruptcy Act, debtors may not discharge their debts to tort victim creditors whose claims are based on "willful and malicious" injuries. 11 U.S.C.A. § 523(a)(6) (West 1993). Thus, it has been recognized that the rights of intentional tort creditors are greater than the public interest in protecting debtors from personal pauperism.

¶21. Perhaps the most important policy consideration in favor of enforcing spendthrift trust provisions is the right of donors to dispose of their property as they wish. On this subject, Austin W. Scott stated in **The Law of Trusts**:

It may be argued that the settlor can properly impose such restrictions as he chooses on the

property that he gives. But surely he cannot impose restrictions that are against public policy. It is true that the tortfeasor may have no other property than that which is given him under the trust, and that the victim of the tort is no worse off where the tortfeasor has property that cannot be reached than he would if the tortfeasor had no property at all. Nevertheless, there seems to be something rather shocking in the notion that a man should be allowed to continue in the enjoyment of property without satisfying the claims of persons whom he has injured. It may well be held that it is against public policy to permit the beneficiary of a spendthrift trust to enjoy an income under the trust without discharging his tort liabilities to others.

Scott, *supra*.

¶22. Clearly, the right of donors to place restrictions on the disposition of their property is not absolute, for as discussed above, there are several generally recognized exceptions to the spendthrift trust doctrine. Rather, a donor may dispose of his property as he sees fit so long as such disposition does not violate the law or public policy. We find that it is indeed against public policy to dispose of property in such a way that the beneficiary may enjoy the income from such property without fear that his interest may be attached to satisfy the claims of his gross negligence or intentional torts.

¶23. Our tort doctrine has evolved into two types of torts, ordinary torts and intentional torts. Public policy deems it so important to deter the commission of intentional torts or acts of gross negligence, that we allow victims of gross negligence or intentional torts to recover damages above and beyond what is necessary to compensate them for their injuries, i.e., punitive damages. However, the intended deterrent effect would be completely lost upon individuals whose interests are immune from the satisfaction of such claims.

¶24. The Slighs have alleged facts to the effect that Lorance's mother intended that her son should be able to commit acts of gross negligence or intentional torts without fear that his beneficial interests would be attached as a result thereof. However, in cases such as this where the donor has died, such facts may often be difficult, if not impossible, to prove. We hold that plaintiffs need not prove such facts but that such intent shall be presumed where a party has obtained a judgment based upon facts evidencing gross negligence or an intentional tort against the beneficiary of a spendthrift trust. Furthermore, we state the natural corollary that when assessing punitive damages against a tortfeasor found to have committed gross negligence or an intentional tort who is a spendthrift trust beneficiary, the beneficiary's interest should be taken into account as a factor in determining his monetary worth. However, in order to uphold spendthrift trust provisions so much as is reasonably possible, we hold that the beneficiary's interest in a spendthrift trust should not be attached in satisfaction of a claim until all of his other available assets have first been exhausted.

### D. Interests of the Remaindermen

¶25. The parties agree that the trusts' two remaindermen, Virginia Tate and William Bardin, have vested remainders. The trusts provide that First National Bank "shall have full and complete authority to expend *all or any part* of the income or corpus of said trust property for the benefit of myself and my said son." (emphasis added). Therefore, the interests of Ms. Tate and Mr. Bardin are vested remainders subject to complete defeasance in the event that all of the trust assets are expended to satisfy the interest of Lorance. Put another way, Lorance has a beneficial interest in *all* of the trust assets. Accordingly, we hold that all of the trust assets should be subject to the Slighs' claim, thereby

defeating the interests of the two remaindermen.

¶26. In *Deposit Guaranty Nat'l Bank v. Walter E. Heller & Co.*, 204 So. 2d 856 (Miss. 1967), the settlor of the trust created a lifetime beneficial interest in himself with a single remainderman. As a matter of public policy, we held the trust's spendthrift provisions invalid as against the claim of the donor/beneficiary's creditor, ruling that the remainderman would take subject to the claim of the creditor. *Deposit Guaranty Nat'l Bank*, 204 So. 2d at 862-63. Likewise, the Slighs' claim shall take priority over the interests of the two remaindermen.

## CONCLUSION

¶27. We find, as a matter of public policy, that a beneficiary's interest in spendthrift trust assets is not immune from attachment to satisfy the claims of the beneficiary's intentional or gross negligence tort creditors, and that such claims take priority over any remainder interests in such assets. Accordingly, we reverse and render.

¶28. **REVERSED AND RENDERED.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, McRAE AND ROBERTS, JJ., CONCUR. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J.**

**PRATHER, PRESIDING JUSTICE, DISSENTING:**

¶29. I must respectfully dissent to the limitations placed by the majority on the exempt status of spendthrift trust benefits. The majority acknowledges that Louisiana is the only other State to place such limitations on spendthrift trust benefits for tort creditors, and said limitations were implemented by the Louisiana legislature rather than the courts of said state. This Court is thus, apparently, the first to so limit the exempt status of spendthrift trust benefits. I am aware of the public policy considerations which motivated the majority's decision, but, in my view, the general rule favoring the exempt status of spendthrift trusts benefits is a sound one which is in no need of revision.

¶30. Spendthrift trusts provide a means for a parent or other concerned party to provide for the basic needs of a beneficiary, and the largely exempt status of the trust benefits has given comfort and support to countless settlors and beneficiaries. The facts of the present case are tragic, but this Court should, in my view, avoid changing longstanding precedent based on the fact pattern of a particular case. Creditors in this state have at their disposal a number of means of collecting judgments, and I fear that the majority opinion signals the start of a gradual decline of the spendthrift trust in this state. I would affirm the ruling of the trial court, and I must accordingly dissent.

**SMITH, J., JOINS THIS OPINION.**

1. The judgment awarded to Will Sligh $2,000,000 in actual damages and $750,000 in punitive damages, and awarded to Lucy Sligh $1,500,000 in actual damages and $750,000 in punitive damages.

2. *See* Laurene M. Brooks, Comment, *A Tort-Creditor Exception to the Spendthrift Trust Doctrine: A Call to the Wisconsin Legislature*, 73 Marq. L. Rev. 109 (1989); Frank A. Gregory, Note, *Trusts: Tort Claims as an Exception to the Spendthrift Trust Doctrine*, 17 Okla. L. Rev. 235 (1964); Antonis, *Spendthrift Trusts, Attachability of a Beneficiary's Interests in Satisfaction of a Tort Claim*, 28 Notre Dame L. Rev. 509 (1952); Costigan, *Those Protective Trusts Which Are Miscalled "Spendthrift Trusts" Reexamined*, 22 Cal. L. Rev. 471 (1934); Griswold, *Reaching the Interest of a Spendthrift Trust*, 43 Harv. L. Rev. 63 (1929).

3. The Louisiana Trust Code provides that the beneficiary's interest in a spendthrift trust may be seized to satisfy a judgment for "[a]n offense or quasi-offense committed by the beneficiary or by a person for whose acts the beneficiary is individually responsible." La. Rev. Stat. Ann. § 9:2005 (West 1991).